## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JUDY L. HOFFMAN,

        Plaintiff,

vs.                           CASE NO: 2:05-cv-15-FtM-JES-SPC

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

_____This matter comes before the Court on the pro se Plaintiff Judy L. Hoffman's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on January 14, 2005.   The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #9) on October 6, 2005.  The Commissioner filed her Memorandum of Law in Support of the Commissioner's Decision (Doc. #10) on December 7, 2005.   Thus, the Motion is now ripe for review.

    The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

# FACTS

## *Procedural History*

The Plaintiff filed applications for a period of disability and Disability Insurance Benefits and for Supplemental Security Income on March 15, 2001.  (Tr. 11).  The applications were denied initially and upon reconsideration.  (Tr. 11).  On August 10, 2001, the Plaintiff filed a Request for Hearing.  A hearing was held on April 17, 2003 before the Honorable Norman L. Marcus, ALJ.  (Tr 8-20).  The Plaintiff submitted a request for the submission of supplementary evidence regarding products with latex content.  (Tr. 203-258).  A continuance of the hearing was conducted on May 22, 2003.  The ALJ submitted his decision on September 19, 2003.  (Tr. 8-20).  The Plaintiff filed a request for review on October 28, 2003.  (Tr. 430).  The Appeals Council received additional evidence from the Plaintiff, and made it part of the record.  (Tr. 7).  The Appeals Council denied the request for review on November 10, 2004 . (Tr.4-6).  Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

## *Plaintiff's History*

The Plaintiff was forty-two (42) years old at the time of the hearing.  (Tr. 12).   The Plaintiff has two (2) years of college education and has  past relevant work as a registered nurse.  (Tr. 12).  The Plaintiff alleges an onset disability date of October 5, 2000 due to a severe respiratory sensitization allergy to latex and lower back pain second to lumbar derangement.  (Tr. 12).

## *Medical History*

The Plaintiff has a history of sinusitis and asthma.  (Tr. 14).  On February 11, 2000, the Plaintiff presented with complaints of nasal congestion, nasal drainage, coughing and pressure in

the right upper chest.  (Tr. 309).  She was treated with mediation for bronchitis and sinusitis.  (Tr. 309).  Chest x-rays on March 24, 2000 were clear and within normal limits. (Tr. 308).  On April 21, 2000, the Plaintiff presented to Dr. David Greene of the Cleveland Clinic with severe sinusitis. (Tr. 307).  Dr. Greene performed a nasal endoscopy and opined that the Plaintiff suffered from severe sinusitis, soptal perforation, turbinate hypertrophy on the left and absence of inferior turbinate on the right.  (Tr. 307).  The Plaintiff was treated with maximal medical therapy.  (Tr. 307).

The Plaintiff was also treated for complaints of low back pain by Dr. Greene.  (Tr. 14, 284-313).  On June 2, 2000, the Plaintiff presented to Cleveland Clinic with low back pain radiating into the thoracic area and down into the right gluteal area.  (Tr. 303-305).  The Plaintiff denied chest pain.  (Tr. 303).  The Plaintiff had no tenderness to palpation, mild tenderness in posterior aspect of the right trapezius muscle, normal range of motion,  normal gait and normal muscle strength.  (Tr. 304).  The Plaintiff was found to have non-specific pain, most likely secondary to acute overuse with subsequent back strain. (Tr. 305).  She was given Celebrex and recommended physical therapy, core strengthening exercises, and flexibility exercises.  (Tr. 305).

Progress notes from the Cleveland Clinic also revealed that the Plaintiff underwent MRI scans on September 27, 2000 and November 29, 2000 which revealed the Plaintiff's cervical spine was within normal limits.  (Tr. 284, 287).  The results also showed minimal disc bulging in T6-7, T7-8, T8-9 and T11-12 (Tr. 284).  The lumbar region revealed no abnormality at L3/4, minimal disc bulge at L4/5 and minimal bulge with no herniation with some facet arthropathy.  (Tr. 286).

The Plaintiff continued to follow-up on her complaints of sinusitis. (Tr. 298, 300).  Dr. Greene found the Plaintiff was improving with her sinusitis and prescribed Prilosec for her throat

symptoms.  (Tr. 298).

On August 16, 2000, the Plaintiff presented with right mid back pain radiating to the upper back and lower back and down the leg on and off for the past two months.  (Tr. 297).  She was assessed with muscular pain with trigger point pain and given a trigger point injection of Depo-Medrol and lidocaine with epinephrine. (Tr. 297).

On September 22, 2000, the Plaintiff presented to the Cleveland Clinic with the chief complaint of difficulty swallowing and a lump in her throat.  (Tr. 288).  The impression was that she had dyspnea.  (Tr. 289).  Pulmonary function studies and chest x-rays were conducted and found to be normal.  (Tr. 288). The Plaintiff was referred for allergy testing to Dr. Kevin Rosenbach.  (Tr. 289).

On September 28, 2000, the Plaintiff presented to Dr. Rosenbach with complaints of latex sensitivity, a long history of allergic rhinitis and recent problems with asthma.  (Tr. 343-347).  Dr. Rosenbach observed exzema on the dorsal aspect of the Plaintiff's left hand and fingers with mild eczema on the right hand.  (Tr. 346).  Dr. Rosenbach also conducted skin testing and found no reaction to epicutaneous airborne allergens.  (Tr. 346, 14). Skin testing also revealed that she had several positives with sensitivity to privet, olive tree, cockroach, and the mold Curvilaria and Stemphylium.  She had minimal sensitivity to pigweed and molds Helminthosporium and Penicillium.  (Tr. 346).  Skin testing to several foods including milk, peanut, egg, pecan, wheat, cocoa, corn, soy, fish, shellfish, and banana, and did not react negatively.  (Tr. 346).

The Plaintiff was  referred to Dr. William N. Dakos for evaluation for Workman's Compensation.  (Tr. 347).  In a letter dated October 20, 2000, Dr. Dakos stated that the Plaintiff's physical examination was essentially unremarkable except for some external nasal

deformity.  (Tr. 361).  Dr. Dakos stated that laboratory findings revealed the Plaintiff has a

formaldehyde sensitivity and moderate to severe latex sensitivity.  (Tr. 361).

_____On December 12, 2001, the Plaintiff presented to Dr. Howard M. Weiner for an

independent medical examination (IME).  (Tr. 397).  Dr. Weiner stated the Plaintiff was

cooperative and arrived on time.  (Tr. 397).  Dr. Weiner stated that he spent four hours and

fifteen (15) minutes directly with the Plaintiff and an additional ten (10)  hours reviewing medical

information.  (Tr. 397).   Dr. Weiner noted that although his office utilizes powdered latex gloves,

the Plaintiff did not show signs of a reaction.  (Tr. 424).   Dr. Weiner performed a nasal cytology

examination on fresh nasal secretions as well as pulmonary function tests.  (Tr. 416).  He

observed a slight cough.  (Tr. 416).  The Plaintiff stated that at the time of her test, her breathing

was "okay".  (Tr. 416).

The Plaintiff continued follow up care with Dr. Rosenbach from April 2002 through

September 2002.  (Tr. 14).   In a letter dated February 13, 2003, Dr. Rosenbach stated that the

Plaintiff has Type I and IV sensitivity to latex and has to avoid primary and secondary exposure to

latex.[2]  (Tr. 425).  Dr. Rosenbach further stated that the Plaintiff could not work in her trained

profession as a nurse.  (Tr. 425).  Dr. Rosenbach noted the Plaintiff is currently being medicated

for her allergy.  (Tr. 425).

*Psychological History*

On April 19, 2002, upon referral from the State Agency, the Plaintiff presented to Dr.

James M. Kolarik for evaluation for a mental impairment.  (Tr. 387-391).  The Plaintiff was

---

[2]Type IV is contact dermatitis and can be avoided by avoiding latex
contact.  Type I is latex allergy, meaning an IgE mediated reaction that results
in allegic rhinitis, conjunctivitis, asthma, hives, or in its most severe form,
anaphylaxis.

administered the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III) and the Millon

Clinical Multiaxial Inventory-III.  (Tr. 389).  On the WAIS-III, the Plaintiff scored 98 on the

verbal I.Q.(within the average range), a 116 on the performance I.Q.(within high-average range) ,

and a 106 in the full-scale I.Q.(within the average range of the population).  (Tr. 390).  On the

Millon, the Plaintiff indicated she was average in her willingness to disclose feelings.  (Tr. 390).

The results indicated some difficulty with anxiety.   (Tr. 390).  Though not clearly showing a

clinical disorder, they point to a mild but persistent amount of worry, restlessness, or tension with

occasional periods of more pronounced uneasiness.  (Tr. 390).  Dr. Kolarik concluded that the

Plaintiff had a score on the Global Assessment of Functioning Scale of 55.  (Tr. 391).

On September 16, 2002, by referral from the Department of Children and Families, the

Plaintiff was evaluated by Dr. Jose Santeiro from the Ruth Cooper Center.  (Tr. 395-396).  Dr.

Santeiro noted that the Plaintiff had no suicidal behaviors and no psychiatric hospitalizations.  (Tr.

395).  Dr. Santeiro concluded that the Plaintiff had a score on the Global Assessment of

Functioning Scale of 75.   Dr. Santeiro concluded  that there was no indication for treatment at

all.  (Tr. 396).  Although, he did offer any outpatient therapy that she may want to have due to the

pending stressors of custody issues.  (Tr. 396).  However, he found no indication of psychiatric

care.  suggested outpatient therapy due to the stressors the Plaintiff experienced, psychiatric care

was not found to be necessary.  (Tr. 396).

### *Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found that, with regard to the period of

disability and Disability Insurance Benefits, the Plaintiff meets the requirements set forth in

Section 216(I) of the Social Security Act and is insured for disability benefits through the date of

this decision. (Tr. 12, 18).  The ALJ found that the Plaintiff has not engaged in substantial gainful

activity since February 26, 1997.  (Tr. 18).  The ALJ determined that the Plaintiff has a latex

allergy and low back pain, a combination of impairments considered "severe" based on the

requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).  (Tr. 18).   The ALJ

further found that the Plaintiff's medically determinable impairments do not meet or medically

equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 CFR §§

404.1520(d) and 416.920(d)).  (Tr. 18).  The ALJ found that the Plaintiff's allegations regarding

her limitations were not totally credible to the disabling extent alleged.  (Tr. 19).   The ALJ

carefully considered all of the medical opinions in the record with regard to the Plaintiff's

impairments and found that the Plaintiff has the residual functional capacity to perform a wide

range of light work.  (Tr. 19).  The ALJ determined that the Plaintiff was incapable of performing

her past relevant work.  (Tr. 19).   The ALJ found the Plaintiff to be a younger individual with

two (2) years of college education.  (Tr. 19).The ALJ concluded that the Plaintiff has the residual

functional capacity to perform a significant range of light work.  (Tr. 19). The ALJ further

concluded that, based upon the Plaintiff's exertional capacity for sedentary work, and age,

education and work experience, Rule 201.28, Table No. 1 of Appendix 2, Subpart P, Regulations

No. 4 is applicable to be used as a framework to the case.  (Tr. 19). Additionally, although the

Plaintiff's exertional limitations prevent her from performing a full range of light work, using the

cited Rule 201.28 as a framework for decision making, coupled with the testimony of the

vocational expert, there exists a significant number of jobs in the national economy that the

Plaintiff can perform.  (Tr. 19).

## THE STANDARD OF REVIEW

### A.  Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards,  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[3].  See 20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
*Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

### B.  Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the

evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the

Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994). With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[4] Id.

### C.  Standard of Review for Evidence Evaluated by the Appeals Council

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g). Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review, the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405 (g). Sims v. Apfel, 530 U.S. 103, 106-107, 120 S.Ct.

---

[4]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

2080, 147 L. Ed. 2d 80 (2000); Bloodsworth, 703 F.2d at 1239.  The Appeals Council "will"

review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law,

or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20

C.F.R. § 416.1470; Sims, 530 U.S. at 111; Parker v. Bowen, 788 F.2d 1512, 1518 (11th Cir.

1986) (en banc). The Appeals Council's denial of review is subject to judicial review to determine

if it is supported by substantial evidence. Sims, 530 U.S. at 111.

 Just as the ALJ has a duty to investigate the facts and to develop the arguments both for

and against the granting of benefits, the Appeals Council's review is similarly broad. Id. at 111-

112.  When the Appeals Council refuses to consider new evidence submitted to it and denies

review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. § §

404.970 (b); 416.1470 (b); Keeton, 21 F.3d at 1066.  Furthermore, the Appeals Council commits

reversible error when it refuses to consider new evidence if that evidence was available at the time

of or prior to the ALJ's hearing and then denies review. Id. at 1066.  Similarly, it is reversible

error for a district court to consider only the evidence presented to the ALJ — and to ignore the

new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council.

Id.  The Appeals Council must consider and evaluate new evidence to determine whether there is

a basis for changing the ALJ's decision. Falge v. Apfel, 150 F.3d 1320, 1322 n. 4 (11th Cir.

1998). When the Appeals Council has denied review, the district court looks only to the evidence

actually presented to the ALJ in determining whether the ALJ's decision is supported by

substantial evidence. Id. at 1323; Eads v. Secretary of Health and Human Services, 983 F.2d 815,

817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him).

The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals

12

Council in reviewing the Appeals Council's denial of review. Falge, 150 F.3d at 1324; Keeton, 21 F.3d at 1066. Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. Id. Similarly, when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record); Falge,150 F.3d at 1324; Keeton, 21 F.3d at 1066, 1068. The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful

activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff for the purpose of this appeal is proceeding pro se, however, she was represented by Counsel during the hearings in this matter.  The Plaintiff argues that the ALJ made an egregious error in denying her benefits.  The Court will construe this argument as the ALJ failed to support his decision with substantial evidence.  The Defendant contends that the decision of the Commissioner is, in fact, based on substantial evidence and should be affirmed.

### Whether the ALJ Discriminated Against the Plaintiff and Failed to Provide the Plaintiff with a Full and Fair Hearing

The ALJ has a duty to fully and fairly develop the record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988); Cowart v. Schweiker, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  However, the ALJ's duty to develop the record does not relieve the Plaintiff of [her] burden of proving that [she] is disabled, and consequently, the Plaintiff is still responsible for producing evidence in support of [her] claim. Ellison (citing 20 C.F.R. § 416.912(c)).

The Plaintiff, in her complaint, contends that because she has been denied social security benefits, that she has been discriminated against.  She indicates that "the ALJ made an egregious error when he denied a qualified disabled American citizen the benefits of the Social Security Administration..."

In the instant case, the Plaintiff was provided a full and fair hearing at which time she was represented by counsel and allowed to provide testimony in support of her claim. (Tr. 480 - 536;

14

537 - 560).  Further, the Appeals Council allowed the Plaintiff to present additional evidence for the record before making a decision on her case.   The Court finds that the Plaintiff  presented no evidence to support her allegation that the ALJ's decision is biased or disciminatory in nature.

*Whether the ALJ Properly Considered the Medical Evidence of Record*

The Plaintiff bears the initial burden of demonstrating that her impairments are severe and that they prevent the performance of her past relevant work.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987). Turner v. Apfel, 2000 WL 205095 S.D. Ala. (2000) (citing Yuckert v. Bowen, 432 U.S. 137, 146, 107 S.Ct. 2287,96 L. Ed. 2d 119 (1987)).  A non severe impairment is merely a slight abnormality, which has a minimal effect on the claimant's general ability.  Macia, 829 F.2d at 1012 (citing Hillman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986)); Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985).

Here, the ALJ began Step 2 of the Sequential Evaluation Process by considering the evidence of record to determine whether the Plaintiff has a severe impairment or a combination of severe impairments.  If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis.  20 C.F.R. §§ 404.1523 and 416.921.

In making his determination, ALJ Marcus reviewed the medical record in its entirety, both mental and physical, and  considered the opinions and treatment notes of the medical sources contained in the record.

(1) Mental Impairment

First, the ALJ considered the medical evidence concerning the Plaintiff's claim of a mental impairment.   The ALJ cites to a psychological evaluation that was conducted at the request of the

15

Florida State Agency (Tr. 13, 387-391).  The interview was performed by Dr. James Kolarik of

Suncoast Psychometrics.   (Tr. 387-391).  Dr. Kolarik noted that the Plaintiff was well groomed

and well dressed.  (Tr. 387).  The Plaintiff was verbal and cooperative during the session.  (Tr.

387).  The Plaintiff denied any suicidal ideation but is currently depressed due to difficulties

regarding her son.  (Tr. 389).  Upon further examination and testing, Dr. Kolarik opined that the

Plaintiff has a GAF Score of 55, which was not indicative of severe symptoms.[5]

The ALJ also points to an evaluation conducted on September 16, 2002 at the request of

the Department of Children and Family Services by Dr. Jose Santeiro of the Ruth Cooper Center

Crisis Stabilization Unit.  (Tr. 395-396).  Dr. Santeiro noted that the Plaintiff was alert, well

groomed with good hygiene and oriented times three.  (Tr. 396). She appeared calm, cooperative,

and coherent.  (Tr. 396).  Dr. Santeiro noted that the Plaintiff showed no evidence of thought or

affective disorder and  no sign of any mental illness.  (Tr. 396).  Based upon his psychiatric

evaluation, Dr. Santeiro assessed the Plaintiff with a GAF score of 75.[6]

The ALJ further noted that the Plaintiff denied receiving treatment for depression.  (Tr.

501-502).  The Plaintiff's own attorney stated that she did not suffer from a "severe"

---

[5] The Global A Assessment of Functioning Scale, or GAF scale, is a numeric scale (0 though 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults. A score of  60-51 indicates moderate symptoms or any moderate difficulty in social, occupational, or  school  functioning. Http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (Accessed March 1, 2006).

[6] A score of 80-71 indicates if symptoms are present they are transient and expectable reactions to psychosocial stresses; no more than slight impairment in social, occupational, or school functioning. Http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (Accessed March 1, 2006).

psychological impairment.  (Tr. 503).  Having considered the evidence of record and the

testimony from the hearing, the ALJ concluded as follows:

> The undersigned finds no evidence that a psychologist or psychiatrist treated the
> claimant, and there is no indication that she was hospitalized for a mental
> condition.  There is no evidence that the claimant's depression is more than a mild
> abnormality with such a minimal effect on the claimant that it would not be
> expected to interfere with her ability to work, irrespective of age, education, and
> work experience.  Therefore, the undersigned concludes that the claimant has no
> "severe" mental impairment. (Tr. 13).

Therefore, the ALJ clearly provided sufficient reasons to support his conclusion discounting the

Plaintiff's claim of a mental impairment.

### (2) Physical Impairments

With respect to the Plaintiff's physical impairments, the ALJ found that the medical

evidence showed the Plaintiff has a latex allergy and low back pain, a combination of impairments

that is severe within the meaning of the Regulations 20 C.F.R. 404.1520(c) and 416.920(c). (Tr.

13).  However, the ALJ could not find where any treating or examining physician reported

findings equivalent in severity to any listed impairment. (Tr. 13).  Thus, the ALJ concluded that

the Plaintiff did not have an impairment or combination of impairments severe enough to meet or

medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No.4.  (Tr.

13-14).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis,

125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462

(M.D. Fla. 1996).  If a treating physician's opinion on the nature and severity of a claimant's

impairments is well-supported by medically acceptable clinical and laboratory diagnostic

techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580,   (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

In support of his finding, the ALJ discusses the progress notes and medical documentation submitted by Dr. David Greene of the Cleveland Clinic and Dr. Kevin Rosenbach, a diplomat of the American Board of Allergy and Immunology. (Tr. 284-314). The Plaintiff presented to Dr. Greene with complaints of sinusitis and asthma. (Tr. 290-292, 298, 300, 302, 306, 308-310). However, treatment notes show that the Plaintiff's asthma improved with medication. (Tr. 290). Pulmonary function studies and chest x-rays were normal. (Tr. 288-289). Endocrinology and hematology reports were negative. (Tr. 288). Dr. Greene noted that the Plaintiff's symptoms dissipated when she "goes out and exercises" or "is working in the yard". (Tr. 288). Dr. Greene referred the Plaintiff to Dr. Rosenbach for allergy testing. (Tr. 289).

The ALJ considered the opinion of Dr. Rosenbach. The Plaintiff presented to Dr. Rosenbach with a history of allergic rhinitis, recent problems with asthma and complaints of a latex sensitivity. (Tr. 14) In a letter dated February 13, 2003, Dr. Rosenbach stated the Plaintiff had a Type I and Type IV sensitivity to latex. (Tr. 425).

The ALJ further considered the findings of Dr. William Dakos who conducted additional allergy testing. (Tr. 14, 361-362). Upon examination, Dr. Dakos concluded the Plaintiff had a formaldehyde sensitivity and noted that it can be treated with a high success rate. (Tr. 361). In a

letter dated November 1, 2000, Dr. Dakos stated that his laboratory findings revealed a moderate to severe sensitivity to latex. (Tr. 360).

The ALJ noted the finding of the independent medical examiner, Howard M. Weiner, M.D., who stated that after four hours and 25 minutes in which powder-filled latex gloves were in use in his office, the [Plaintiff] demonstrated no reaction. (Tr. 424).

The ALJ considered the testimony of Dr. John Griscom, an independent medical expert who was called to provide testimony based upon his review of the medical evidence in the record. (Tr. 15, 507 - 528).  Dr. Griscom has treated patients with severe latex allergies and found that the Plaintiff's latex sensitivity allergy does not meet listing level of severity.  He stated that, based on the Plaintiff's medical record, that she has a medically determinable impairment that is latex allergy, and that both type I and type IV are clinically present.  (Tr. 511).   However, he opined that the Plaintiff's condition would not prevent sedentary or moderate work in a latex free environment.   (Tr. 512).  He further stated that it was his belief that the Plaintiff's reactions are in excess of both what the medical record would support and his clinical experience.  (Tr. 513-514).

Dr. Griscom also reviewed the limited records from Dr. Figeroa.  (Tr. 520).   With regard to the Plaintiff's complaints of back pain and MRI cord touching, Dr. Griscom testified that he found no evidence of a disc touching a nerve.  He stated that cord touching is less significant than a ruptured disc touching a nerve.  (Tr. 523).

The ALJ also considered the MRI scan of the Plaintiff's cervical spine which was taken on October 2, 2000.  The results revealed a normal cervical spine and normal spinal cord signal.  (Tr. 284-286).  The MRI of the lumbar spine showed no abnormality at L3-4, minimal disc bulge with some facet arthropathy at L4-5, and no herniation.  (Tr. 286).  The ALJ noted that another MRI

scan taken one month later showed no evidence of central stenosis or neural foraminal narrowing and only mild facet and ligamentum flavum hypertrophy at L3-4, and L4-5 levels. (Tr. 284-286).

The ALJ concluded that Dr. Griscom's expert testimony shows careful analysis of the impairments and "his determinations are [credible] because they are supported by objective medical and radiographic findings." (Tr. 15). The ALJ did not discount the opinions of the Plaintiff's treating physicians. However, he need not do so since the records they provide merely show a latex allergy and lower lumbar problems. No where in the record does it indicate that the Plaintiff's impairments or combination of impairments are severe enough to meet or medically equal one of the listed impairments. The ALJ correctly examined the record and provided substantial evidence to support his finding that the Plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 14).

*Did the Plaintiff Retain the Residual Functional Capacity to Perform the Requirements of Her Past Relevant Work or Work Existing in Significant Numbers in the National Economy*

A determination must be made as to whether the Plaintiff retains the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy. The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. (20 CFR §§ 404.1545 and 416.945).

The ALJ first cites to the Plaintiff's hearing testimony.[7]  He specifically considered the

Plaintiff's subjective complaints, as contained in her testimony and supporting documents in

accordance with Social Security Regulations (20 CFR §§ 404.1529 and 416.929).  He found after

consideration of all of the factors that the "claimant's subjective complaints are not fully credible

to the extent that she is unable to perform all work activity." (Tr. 16).

_____While the performance of everyday tasks cannot be used to make a determination that the

Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in

regard to [her] ability to perform certain tasks. *See* Moore v. Barnhart, 405 F.3d 1208, 1212

(11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by

pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v.

Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's

allegations of disabling pain were not credible because of her daily activities demonstrated

otherwise). *See* Norris v. Heckler, 760 1154, 1158 (11th Cir. 1985) (holding that an ALJ may

consider the plaintiff's demeanor when making a credibility determination).

When an ALJ decides not to credit a claimant's testimony, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

---

[7]According to the Plaintiff's hearing testimony, she developed respiratory problems after going to work at the Cleveland Clinic and was subsequently diagnosed with adult onset asthma.  The Plaintiff stated that upon exposure to latex gloves, balloons, or rubber bands, her vocal cords become raspy; her chest tightens; she develops swelling, and her blood pressure plummets.  She stated that eating foods handled by latex and exposure to trees could also trigger similar reactions.  The Plaintiff also testified that she has four thoracic bulging discs, which cause numbness down her arms and on the sides of her body when lying on either side.  She maintained that, on a bad day, she has to lie down all day.  As to functional limitations, she stated that if she lifts her son, who is six years old and weighs 50 pounds, 'she pays a price."  In addition, she stated that she is limited to sitting two hours at most and standing 45 - 60 minutes.  As to activities of daily living, the Plaintiff stated that she does low impact exercises at home.  (Tr. 15 - 16).

credibility finding. Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

Upon consideration of the Plaintiff subjective complaints,  the ALJ found the Plaintiff's complaints not credible.  In his decision, the ALJ writes:

> Specifically the claimant's allegations are inconsistent and disproportionate to the medical evidence in the record.  By her own admission, she takes care of her son and does low impact exercises at home. She previously reported that she was unable to eat bananas, but this was contradicted by Dr. Rosenback who noted that testing found no allergy to bananas.  As testified to by medical expert opinion, the claimant's reactions regarding her latex allergy are in excess of both what the medical records would support and his clinical experience.  Moreover, the final

order of the Judge of the workers' compensations claim cites surveillance tapes of the claimant entering food stores, restaurants, and a motorcycle store. Consideration of this information is permissible under the substantive evidence rules (20 C.F.R. §§ 404.1529, 416.929, and Social Security Ruling 96-7p). (Tr. 16).

Clearly, the ALJ articulated specific and adequate reasons as to why he found the Plaintiff's subjective complaints not credible.

The ALJ indicates that at the reconsideration level, the State Agency non-examining physician expressed the opinion that the Plaintiff could perform light work. (Tr. 16, 379-386). The ALJ further indicates that "Although the State Agency physician did not examine the Plaintiff, she provided specific reasons for the opinion about the residual functional capacity showing that the opinion was grounded in the evidence in the case record including careful consideration of the Plaintiff's allegations about her symptoms and limitations." Further the ALJ found that "the evidence received into the record after the reconsideration determination did not provide any new or material information that would alter any findings about the Plaintiff's residual functional capacity." (Tr. 16). Therefore, he awarded her opinion greater weight.

Based upon the foregoing, the ALJ concluded that the Plaintiff retains the residual functional capacity for light work. [8]   Although the Plaintiff must avoid exposure to a latex environment, the ALJ concluded that "the Plaintiff is capable of a wide range of light work." (Tr. 16).

---

[8]"Light" work involves lifting no more than 20 pounds with frequent lifting or carrying up to 10 pounds. The full range of light work requires standing or walking, off and on, for six hours of an eight-hour day. Sitting may occur intermittently during the remaining time. Occasional stooping is required. Some push/pull arm-hand or leg-foot movement may be necessary. Occasional stooping is required. Some push/pull arm-hand or leg-foot movement may be necessary. If someone can do light work, it is determined that she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods (20 CFR 404.1567(b) and 416.967(b)).

24

In reaching that conclusion, the ALJ found no evidence of disc herniation or stenosis of the cervical or lumbar spine, or any deficits of the Plaintiff's upper or lower extremities.  (Tr. 16). He found chest x-ray and pulmonary functioning tests to be normal.  He further found that  "the record does not contain any opinions from treating or examining physicians indicating that the Plaintiff has limitations greater than those determined in this decision." (Tr. 17).

Based upon the Plaintiff's residual functional capacity, the ALJ must determine whether the Plaintiff can perform any of her past relevant work.  The phrase "past relevant work usually must have been performed within the last 15 years or 15 years prior to the date that disability must be established and must have lasted long enough for the Plaintiff to learn to do the job and meet the definition of substantial gainful activity.  20 CFR §§ 404.1565 and 416.965.

It is clear from the record that the Plaintiff has past relevant work as a registered nurse which is classified as skilled work requiring medium exertion. (Dictionary of Occupational Titles No. 075.364-010).  Considering that the Plaintiff has the exertional capacity for light work and that her past work required frequent exposure and handling of latex material, the ALJ found that the Plaintiff "lacks the ability to perform the work that she has done in the past." (Tr. 17).

### Whether the ALJ Made the Proper Determination at Step Five

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v.Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance

on the Medical-Vocational Guidelines [the "grids"]. <u>Foote</u>, 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); <u>Foote</u>, 67 F.3d at 1559 (citing <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S.Ct. 1952, 76 L. Ed. 2d 66 (1983) (holding that exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." <u>Walker v. Bowen</u>, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Foote</u>, 67 F.3d at 1559; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir. 1986) (when nonexertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. <u>Foote</u>, 67 F.3d at 1559.

To assist in arriving at a determination of whether the Plaintiff was capable of performing other work existing in significant numbers in the national economy, Everett Tessmer, Ph.D., a

26

vocational expert, was called as a witness at the hearing on April 17, 2003, and again at a

continuance hearing on May 22, 2000.  (Tr.  480-536, 537-560).  At both hearings, Dr. Tessmer

was asked whether jobs exist in the national economy for an individual of the Plaintiff's age,

education, past relevant work experience, and residual functional capacity.  Dr. Tessmer testified

that, assuming the hypothetical individual's specific work restrictions, including the issues posed

by the Plaintiff's attorney at the continuance hearing, the Plaintiff is capable of making a

vocational adjustment to other work as follows:

> Proof operator at a bank is unskilled work requiring sedentary exertion; there are
> 500,000 jobs in the national economy.  (DOT No. 217.382.010).  Companion is
> unskilled work requiring light exertion; there are 500,000 jobs in the national
> economy. (DOT No. 309.677-010).  Telemarketer is unskilled work requiring light
> exertion (DOT No. 299.357-014).  Survey worker is unskilled work requiring light
> exertion; there are 100,000 jobs in the national economy.  (DOT No. 299.357-
> 014). (Tr. 17).

The ALJ found that "the hypothetical (not supporting draconian measures to avoid

exposure to latex) is supported by a preponderance of substantial evidence.  (Tr. 17).  He

articulated that he found Dr. Tessmer's testimony to be credible because it was based on a

hypothetical supported by the evidence and his extensive knowledge of and experience in the

local, regional, and national job markets.  (Tr. 17).

Therefore, he concluded that the Plaintiff "retains the capacity for work that exists in

significant numbers in the national economy and is not under a 'disability' as defined in the Social

Security Act, at any time through the date of this decision." (20 CFR §§ 404.1520(f) and

416.920(f)).

Consequently based upon the record, the ALJ's decision, and the analysis above, the

Court respectfully recommends that the decision of the ALJ should be affirmed.

Accordingly, it is now respectfully

**RECOMMENDED**:

The Decision of the Administrative Law Judge should be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of March, 2006.



SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record.

28